UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CARLOS RODRIGUEZ,<br><br>　　　　　　Plaintiff,<br>　　v.<br><br>CITY OF SALINAS; Sergeant MARK LAZZARINI; Officer STEPHEN CRAIG; Officer CHRIS BALAORO; Officer DANNY WARNER; Officer KEN SCHWENER; Officer CUPAK,<br><br>　　　　　　Defendants. | Case No.: 09-CV-02454-LHK<br><br>ORDER DENYING MOTION TO DISMISS |

In his First Amended Complaint, Plaintiff Carlos Rodriguez alleges violations of his First, Fourth, and Fourteenth Amendment rights in connection with a search of his home that resulted in his arrest and a third-party's conviction on criminal charges. Defendants moved to dismiss the First Amended Complaint pursuant to the doctrine articulated by the Supreme Court in *Heck v. Humphrey*, 512 U.S. 477 (1994). Plaintiff opposed the motion, and Defendants declined to file a reply. Pursuant to Civil Local Rule 7-1(b), the Court finds that this motion is appropriate for determination without oral argument. Having concluded that the *Heck* doctrine does not apply to the facts alleged in this case, the Court DENIES Defendants' motion to dismiss.

**I. Background**

In the spring of 2007, Plaintiff Carlos Rodriguez worked for the housing authority managing the large apartment complex where he lived in Salinas, California, and also worked six

1

1    days a week as a delivery driver. Pl.'s First Amended Compl. for Damages for Violation of Civil
2    Rights ("FAC") ¶ 7. Plaintiff was unmarried and lived alone, but occasionally his sister, Cynthia
3    Rodriguez, and her child spent the night in the second bedroom of his apartment. FAC ¶ 9. In
4    May 2007, Plaintiff agreed to let his sister stay with him for a few weeks. FAC ¶ 10. During that
5    time, Ms. Rodriguez was in communication with her ex-boyfriend, Jerry Lara, as they were co-
6    parenting their child. *Id.* Plaintiff states that Mr. Lara visited his residence on a few occasions
7    while Ms. Rodriguez was staying there, and he spent the night once or twice, sleeping on the living
8    room sofa. FAC ¶ 10-11.

9    Unbeknownst to Plaintiff, Mr. Lara was then on parole and subject to continual surveillance
10   by law enforcement. FAC ¶ 12. At Mr. Lara's subsequent criminal proceeding, one of the
11   Defendant police officers testified that one or more officers thought they observed Mr. Lara near
12   Plaintiff's apartment complex on May 9, 2007.[1] FAC ¶ 12. Twenty-six days later, on June 4,
13   2007, the police stopped Lara based on a probation search provision while he was driving to the
14   grocery store with Plaintiff's sister. FAC ¶ 13. Lara was pulled over at 10:21 p.m., at which time
15   Plaintiff was asleep at home in his bedroom. *Id.* When asked, both Lara and Ms. Rodriguez told
16   the police officers that Lara resided with his mother and denied that he had ever resided with
17   Plaintiff. FAC ¶ 14. The officers conducted a vehicle search and found nothing incriminating. *Id.*

18   While the traffic stop was still in progress, other officers were dispatched to Plaintiff's
19   residence to conduct an immediate, warrantless search of his apartment. FAC ¶ 15. By the time
20   they reached Plaintiff's residence, it was nearing midnight. FAC ¶ 16. Plaintiff alleges that the
21   officers failed to knock and announce their presence and instead broke and entered through a rear
22   door. *Id.* Plaintiff states that he awoke to noises downstairs, got out of bed, and was "shocked to
23   be confronted with an [officer] with a gun pointed directly at his head." FAC ¶ 17. Plaintiff claims
24   that there were eight police officers inside his apartment. *Id.*

---

[1] This factual background is drawn from the facts as stated in Plaintiff's FAC. In their motion, Defendants dispute Plaintiff's account of their prior observations of Mr. Lara and the search of Plaintiff's home. For purposes of this motion, however, the Court must accept as true the factual allegations in the FAC. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

1    Plaintiff states that he did not consent to the search of his apartment. FAC ¶ 17.
2 Nonetheless, as he was shocked and frightened and did not want to cause trouble, he followed the
3 officers' orders and stood outside while they searched the apartment. FAC ¶¶ 17-19. Shortly after
4 the search began, Plaintiff's sister arrived in another law enforcement vehicle. FAC ¶ 18. She
5 reminded him of his right not to be subjected to a warrantless search of his residence and urged him
6 to stand up for his constitutional rights. *Id.* After thinking it through, Plaintiff spoke to the police
7 officers and demanded that they halt the search and allow him back into his home. FAC 18-19.
8 Plaintiff alleges that the officers refused and physically blocked him from re-entering the
9 apartment. FAC ¶ 19. Plaintiff claims that when he persisted in his demands, the officers grabbed
10 him without warning and placed him in a pain compliance hold. *Id.* The officers then handcuffed
11 Plaintiff in front of his sister and several tenants of the apartment complex and placed him in the
12 back of a patrol car. FAC ¶ 20.

13    In the course of the search, the officers found Lara's duffel bag in Ms. Rodriguez's room,
14 and a search of the bag produced a gun. FAC ¶ 21. Lara was later found guilty of a probation
15 violation. Pl.'s Opp'n 2. Plaintiff was accused of resisting and delaying the officers, read his
16 Miranda rights, and interviewed while in custody at police headquarters, but was ultimately
17 released around 1 a.m. that night. FAC ¶ 21. The charges against Plaintiff were dismissed before
18 his first court appearance. FAC ¶ 22. Plaintiff claims, however, that he was fired as manager of
19 the apartment complex and evicted from his residence as a result of having been handcuffed and
20 arrested in front of other tenants. *Id.*

21    On June 3, 2009, Plaintiff filed a complaint against the City of Salinas, the County of
22 Monterey, and 20 unknown city and county officers and employees for violations of his First,
23 Fourth, and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 ("Section 1983").
24 Plaintiff subsequently dismissed the county defendants, and on June 9, 2010, Plaintiff amended his
25 complaint to name Sergeant Mark Lazzarini, Officer Stephen Craig, Officer Chris Balaoro, Officer
26 Danny Warner, Officer Ken Schwener, and Officer Cupak (collectively "Defendant Officers" or
27 "the Officers") as Defendants. Plaintiff's First Amended Complaint alleges that Defendant City of
28 Salinas and the Defendant Officers deprived Plaintiff of his First Amendment right to verbally

3
Case No.: 09-CV-02454-LHK
ORDER DENYING MOTION TO DISMISS

criticize and protest police actions without retaliation and violated his Fourth Amendment rights to be free from unlawful search and seizure, unlawful arrest, and excessive force. FAC ¶¶ 24, 30. Defendants now move to dismiss Plaintiff's First Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted under the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994).

## II. Legal Standard and Request for Judicial Notice

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In considering whether the complaint is sufficient to state a claim, the court must accept as true all of the factual allegations contained in the complaint. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). However, the court need not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc.* (*In re Gilead Scis. Sec. Litig.*), 536 F.3d 1049, 1055 (9th Cir. 2008). While a complaint need not allege detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.

As a general rule, a district court may not consider any material beyond the pleadings in ruling on a 12(b)(6) motion to dismiss for failure to state a claim. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). A court may, however, take judicial notice of matters of public record pursuant to Federal Rule of Evidence 201, provided that the judicially noticed facts are not subject to reasonable dispute. *Id.* at 689; Fed. R. Evid. 201(b). In this case, Defendants request judicial notice of two facts: (1) the denial, on July 1, 2008, of Jerry Lara's motion to suppress evidence by the Monterey County Superior Court, and (2) the California Court of Appeal's affirmance, on May 7, 2010, of the trial court's suppression ruling. Req. for Judicial Notice in Supp. of Def.'s Mot. to Dismiss ("RJN") 1-2. Defendants submitted the Superior Court's Minute

4

Case No.: 09-CV-02454-LHK
ORDER DENYING MOTION TO DISMISS

Order and a certified copy of the Court of Appeal's decision as exhibits to their request. RJN, Ex. A, Ex. B.

The fact that Jerry Lara moved to suppress evidence collected during the search of Plaintiff's apartment, that the trial court denied his motion, and that the Court of Appeal affirmed the trial court's ruling are all undisputed. Accordingly, the Court takes judicial notice of these facts, as well as the existence of the Minute Order and appellate decision submitted by defendants. However, the accuracy of the testimony and other factual accounts in the appellate decision are contested by Plaintiff.[2] The Court therefore will not take judicial notice of the truth of any testimony or factual findings contained in the Court of Appeal decision. *See Wyatt v. Terhune*, 315 F.3d 1108, 1114 n.5 (9th Cir. 2003) ("Factual findings in one case ordinarily are not admissible for their truth in another case through judicial notice.").

### III. Discussion

#### A. The *Heck* Doctrine

Defendants argue that the FAC should be dismissed because it fails to state a claim under the law and reasoning established by the Supreme Court in *Heck v. Humphrey*, 512 U.S. 477 (1994). More specifically, Defendants claim that Plaintiff's Fourth Amendment cause of action for unlawful search and seizure, unlawful arrest, and excessive force is barred by *Heck*, and that Plaintiff's First Amendment cause of action is also barred because it is derivative of his Fourth Amendment claims. The Court disagrees.

In *Heck*, the Supreme Court considered the question of "whether a state prisoner may challenge the constitutionality of his conviction in a suit for damages under 42 U.S.C. § 1983." 512 U.S. at 478. Petitioner Roy Heck had been convicted of voluntary manslaughter and was

---

[2] As Plaintiff points out, Defendants appear to believe that the Fourth Amendment ruling in Lara's criminal case has a preclusive effect on the instant proceeding. Although Defendants do not explicitly argue res judicata or collateral estoppel, they repeatedly cite facts found by the California Court of Appeal and state that the "same issue involving the same set of facts and involving the same parties has already been resolved." Def.'s Mot. 7. Defendants are incorrect. As the Court explains below, the issue of whether the search violated Plaintiff's rights is not identical to the issue of whether the search violated Lara's rights. Moreover, Plaintiff was not a party to Lara's criminal proceeding and no one has suggested that he was somehow in privity with Lara such that collateral estoppel could apply. *See Ayers v. City of Richmond*, 895 F.2d 1267, 1271 (9th Cir. 1990) (requiring identity of issues and privity with a party to the prior trial, among other things, for application of collateral estoppel).

5

Case No.: 09-CV-02454-LHK
ORDER DENYING MOTION TO DISMISS

serving a 15-year sentence when he filed a Section 1983 action in federal court seeking monetary damages for constitutional violations in his arrest and prosecution. *Id.* at 478-79.  In a previous decision, the Supreme Court had held that a habeas corpus proceeding is the exclusive remedy for a state prisoner who seeks to challenge the fact or duration of his confinement and seeks immediate or speedier release. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).  Although the constitutional violations alleged by Mr. Heck directly implicated the legality of his confinement, he sought only monetary damages and did not ask for release or a reduced sentence. *Heck*, 512 U.S. at 479, 481.  Thus, the Court was faced with the question of whether a state prisoner's claim for damages is cognizable under Section 1983 when the prisoner does not seek release, but "establishing the basis for the damages claim necessarily demonstrates the invalidity of the conviction." *Id.* at 481-82.  The Court concluded that such claims are not cognizable under Section 1983 and held that a state prisoner may not recover damages for constitutional violations that would render his conviction unlawful unless and until he demonstrates that his conviction has been reversed, invalidated, or called into question by the issuance of a writ of habeas corpus. *Id.* at 486-87. *See also Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) ("*Heck* specifies that a prisoner cannot use § 1983 to obtain damages where success would necessarily imply the unlawfulness of a (not previously invalidated) conviction or sentence."); *Muhammad v. Close*, 540 U.S. 749, 751 (2004) ("In *Heck v. Humphrey*, we held that where success in a prisoner's § 1983 damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence.") (citation omitted).

      This Court agrees with Plaintiff that the *Heck* doctrine does not apply to the facts of this case.  As the Supreme Court stated in its decision, *Heck* deals with "the intersection of the two most fertile sources of federal-court *prisoner* litigation"– the habeas corpus statute and Section 1983. *Heck*, 512 U.S. at 480 (emphasis added).  In *Heck* and related decisions, the Supreme Court "focused on the need to ensure that state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement." *Wilkinson*, 544 U.S. at 81.  The *Heck* doctrine is premised on "considerations of linguistic specificity, history, and comity"

6

1   that establish habeas corpus proceedings as the sole means of obtaining release from unlawful
2   confinement. *See id.* at 78-79. The doctrine's purpose, in part, is to ensure that prisoners seeking
3   to challenge their convictions, either directly or indirectly, cannot circumvent the limitations on the
4   availability of habeas remedies, such as the requirement that a prisoner first exhaust state remedies
5   before challenging a state conviction in federal court. *Muhammad*, 540 U.S. at 751. Here, Plaintiff
6   is not a state prisoner, has not been convicted of any crimes, and does not seek to challenge the
7   legality of his conviction. No habeas remedy is, or ever was, available to him as an alternative
8   remedy for the constitutional violations alleged. Accordingly, the law and reasoning of *Heck* do
9   not apply.

10   Defendants argue nonetheless that *Heck* applies to Plaintiff's case because successful
11  litigation of his Fourth Amendment claims would undermine the validity of Lara's conviction.
12  Defendants cite no authority for the proposition that *Heck* bars a Section 1983 action brought by an
13  individual who has not been convicted of any crime simply because his constitutional claims may
14  have some bearing on the validity of a third party's conviction. Moreover, even if the Court
15  accepted this argument, the Court does not agree that "Plaintiff's allegations of Fourth Amendment
16  violations cannot stand without assuming the invalidity" of Lara's conviction, as Defendants claim.
17  Def.'s Mot. to Dismiss Pl.'s FAC ("Def.'s Mot.") 7. It is axiomatic that the "the Fourth
18  Amendment protects people, not places," *Katz v. United States*, 389 U.S. 347, 351 (1967), and that
19  Fourth Amendment rights are personal to each individual. *See United States v. Struckman*, 603
20  F.3d 731, 746 (9th Cir. 2010) (citing *Alderman v. United States*, 394 U.S. 165, 174 (1969)).
21  Because Fourth Amendment protection turns on a number of factors, including a person's
22  reasonable expectation of privacy in the place searched, a single search may be lawful as to one
23  person, but unlawful as to another. *See United States v. Zermeno*, 66 F.3d 1058, 1060-62 (9th Cir.
24  1995) (search found illegal as to defendant who resided in house searched, but not as to defendants
25  who used the house as a "stash house"); *see also Rawlings v. Kentucky*, 448 U.S. 98, 104-06 (1980)
26  (finding that even if search of another's purse was illegal, it was not unlawful as to petitioner
27  because he had no reasonable expectation of privacy in the purse). In this instance, as a parolee
28  and a visitor in Plaintiff's home, Lara's expectation of privacy in the apartment was likely not the

7

Case No.: 09-CV-02454-LHK
ORDER DENYING MOTION TO DISMISS

same as Plaintiff's, *see Samson v. California*, 547 U.S. 843, 848-50 (discussing diminished expectations of privacy of parolees and probationers), and Lara was not present to experience aspects of the search, such as having a gun pointed at his head, that Plaintiff alleges were unreasonable. Thus, it is possible that the search of Plaintiff's apartment could violate Plaintiff's rights without violating Lara's. In any case, Plaintiff does not ask the Court to find the search unlawful in some abstract, global sense, but rather to find that Plaintiff's Fourth Amendment rights were violated. Whether the search violated Lara's rights is not at issue. *See Struckman*, 603 F.3d at 746 ("Fourth Amendment rights are personal rights which . . . may not be vicariously asserted") (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969)).

Finally, the Court notes that Plaintiff's claims of unlawful arrest and excessive use of force do not appear to depend on his allegations that the search was unlawful. These claims thus have no relationship to the validity of Lara's conviction. For all of these reasons, the Court finds no support for Defendants' argument that the *Heck* doctrine bars Plaintiff's Fourth Amendment claims. Accordingly, the motion to dismiss Plaintiff's Fourth Amendment claims is DENIED.

### B. First Amendment Claim

As to Plaintiff's First Amendment claim, Defendants primarily argue that it, too, is barred by *Heck* because it is "derivative" of Plaintiff's Fourth Amendment claims. Because the Court has found that *Heck* does not bar Plaintiff's Fourth Amendment claims, this argument fails. Defendants also state, without citation or elaboration, that there is no First Amendment right to "verbally criticize and verbally interfere with a lawful probation search." Def.'s Mot. 7. However, as Plaintiff points out, the Supreme Court has explicitly stated that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston, v. Hill*, 482 U.S. 451, 461 (1987); *see also, e.g.*, *Mackinney v. Nielsen*, 69 F.3d 1002, 1007 (9th Cir. 1995) ("Ninth Circuit law also clearly establishes the right verbally to challenge the police."). Accordingly, Defendant's conclusory statement does not provide a basis for dismissal, and Defendant's motion to dismiss Plaintiff's First Amendment claim is therefore DENIED.

**IV.  Conclusion**

For the foregoing reasons, Defendants' motion to dismiss the FAC is DENIED.  The hearing on Defendants' motion is hereby VACATED.  However, the Court will hold a Case Management Conference as scheduled on January 13, 2011, at 1:30 p.m.

**IT IS SO ORDERED.**

Dated: January 7, 2011

_____
LUCY H. KOH
United States District Judge